CASTERA v. COMMERCIAL BUILDING & LOAN ASSOCIATION.

Opinion delivered July 6, 1931.

D. K. Hawthorne, for appellants.
Tom F. Digby, for appellee.

BUTLER, J. Frank Castera procured a loan from the Commercial Building & Loan Association of $1,200 which was evidenced by his promissory note for that amount with interest. To secure the payment of the note, he conveyed to M. L. Altheimer, as trustee for the loan association, block No. 33, Choctaw Addition to the city of North Little Rock, with power to sell the property in default of payment of the note when due. F. Castera died intestate, not having paid the indebtedness aforesaid, and leaving surviving him as his sole heirs the appellants, Arthur Castera and Lytle Castera, his wife. Arthur Castera and wife entered into possession of block 33 and impressed a part of said block to the extent of one-fourth of an acre with their homestead rights. Subsequent to this, Arthur Castera, being indebted to C. E. Smith, mortgaged said block to the latter to secure the payment of that indebtedness, but his wife, Lytle Castera, did not join in the execution of the deed or acknowledge her relinquishment of dower and homestead rights therein.

The indebtedness to Smith becoming due and being unpaid, Smith brought suit to foreclose his mortgage. The appellee, Commercial Building & Loan Ass'n, intervened in that suit, setting up its rights under the deed of trust executed by Frank Castera. The appellant, Arthur Castera, answered admitting the allegations of the intervention of the loan association and his indebtedness to Smith, but alleged that a part of block No. 33 included in the deed of trust and mortgage was his homestead at the time of the execution of the mortgage to Smith, and that such mortgage, in so far as it affected that part of the block constituting his homestead, was void for failure of his wife to join in the execution of the deed or its acknowledgment. Mrs. Castera intervened, alleging that she had not signed the mortgage to Smith, and set up her right of dower and homestead. A decree was rendered adjudging the amount due the loan association to be $11,471.25 and declaring its lien by virtue of the deed of trust aforesaid paramount to the mortgage lien

of Smith and to the homestead and dower rights of Mrs. Castera. The decree adjudged to Smith, as the sum due him, $871.25, and declared a lien on all the property subject to the paramount lien of the loan association and the homestead of one-fourth of an acre. The decree ordered that the homestead be set apart by certain boundaries, and further that, if the sum adjudged to be due the loan association should not be paid within three days from the date of the decree, the commissioner appointed by the court should proceed to sell first all of block 33, except the one-fourth acre, and apply the proceeds to the payment of the debt due the loan association, and, in the event it should not be sold for enough to pay the debt, with accrued interest and costs, that the one-fourth acre set aside be also sold and the proceeds from that sale be applied first to the satisfaction of the debt of the loan association. The decree contained other recitals as to the disposition of any moneys remaining which it will not be necessary to notice as will later appear.

This decree was rendered on June 18, 1929. The judgment debt remaining unpaid, the commissioner gave notice of the sale of the property by publication in the "Arkansas Legionnaire" on June 29, 1929, July 7, 1929, and July 13, 1929, in which notice the day of sale was fixed for the 26th day of July, 1929, on the usual terms, and to be had at the usual place for judicial sales in Pulaski County, and within the hours prescribed for such by law. It provided that the sale was by the authority and direction of a decretal order of the court made on the 21st day of January, 1929, giving the style of the case. The property to be sold was properly described. On the date fixed in the notice the sale was duly had and conducted in the manner ordered in the decree and sold in parcels as therein directed. At this sale the loan association became the purchaser, the total amount for which the parcels sold not being in excess of the debt and accrued interest adjudged to be due it. The commissioner duly reported the sale as having been made under the authority of the decree rendered on June 18, 1929, which

report was filed on August 10, 1929. The report came on for a hearing on August 13, 1929, and was examined, approved, and the sale confirmed. The deed to the purchaser having been executed, it, too, was presented and acknowledged in open court, and by the court duly approved.

On February 27, 1930, the loan association sold lots 4, 5 and 6 of said block 33 to Annie B. Shaeffer for the sum of $4,500, conveying the same to her by warranty deed of that date, and on April 8, 1930, sold lot 9 of said block to W. M. Robinson and his wife, Lucile Robinson, for the sum of $3,657.50. Before the sales by the loan association aforesaid, and in September, 1929, the loan association had taken possession of the property under its conveyances by the commissioner of the court and had collected the rents from the dwelling houses situated thereon.

On May 7, 1930, the appellants, Arthur Castera and Lytle Castera, filed a pleading designated "Petition of Arthur Castera and Lytle Castera to Redeem," in which all the facts hereinbefore stated were recited, and the allegation made that the sale by the commissioner to the loan association was void for the reason "that the mortgage on said property given by Arthur Castera to C. E. Smith was void because his wife did not join with him in the mortgage and the property described in the mortgage embraced his homestead, and that Lytle Castera, wife of Arthur Castera, has a right to redeem from said sale because the sale of the property was advertised under the decree rendered on the 21st day of January, 1929, and notwithstanding the commissioner's report of sale mentioned that decree was rendered on the 18th day of June, 1929, wherein the Commercial Building & Loan Association was a party to the suit; but a sale under the decree of June 18, 1929, would be void for the reason that M. L. Altheimer, as trustee, held the legal title to the property, and he was not a party to the suit, and the title still remains in him." The petition concluded with a prayer that the report of the commissioner and the sale made by

him be set aside and the deed executed by him to the loan association be canceled; that the deeds executed by the loan association to its vendees hereinbefore named be canceled, and that petitioners be permitted to redeem the property sold under the decree of the court, and offered to pay the sum adjudged to be due the loan association as its debt, together with the interest that had accrued on the same from the date of the decree and the costs that had accrued, and offered to pay any other sum which might be lawful and necessary to pay in order to effect the redemption of the property and the investiture of the title free of the liens and mortgages in the petitions, and for an accounting of the rents and profits received by the loan association and its grantees, etc.

On the 23rd day of May, 1930, the loan association filed its motion to dismiss the petition on the ground that the petition shows on its face that the term of court at which the sale was reported and at which the same was confirmed had expired for an approximate period of nine months before the petition to redeem was filed. The matter coming on to be heard on the petition to redeem and the motion to dismiss, the court sustained the motion and dismissed the petition, from which order is this appeal.

It was and is the contention of the appellants that (1) the decree and the proceedings had pursuant to its orders were void because M. L. Altheimer, the trustee named in the deed of trust executed by Frank Castera to secure the indebtedness due the loan association, was not named as a party in the intervention filed by the loan association; (2) that the sale was improperly made because notice was published in a paper not having a general circulation as prescribed by statute; (3) that the sale was void because the notice stated that it was to be made in accordance with, and by virtue of, a decree rendered January 21, 1929, whereas the decree was rendered on June 18, 1929; (4) that the time limit fixed in the decree was three days, after which the commissioner might proceed to make sale; (5) that the time of sale fixed in the

notice by the commissioner was too limited, and, because of that, the appellant did not have sufficient time to arrange for the payment of the money found due by the decree.

Assuming that any one or all of the grounds alleged by the appellants were sufficient cause for setting aside the decree or the sale made pursuant thereto in the original proceeding, which we do not decide, these were unavailing to the petitioner in this proceeding. From the recitals in the decree of June 18, 1930, it appears that the appellants were present in court by their attorney; that they had filed their answer and intervention and the court, in its decree, gave them all the relief prayed, namely, that their homestead should be exempted from sale under the mortgage given to Smith. They did not complain of the failure to make the trustee, Altheimer, a party, nor of the time limit of three days fixed in the decree in which they might pay the judgment before the commissioner should proceed to make the sale. It was their duty to take cognizance of all of the steps taken by the commissioner, and, if they felt their rights had been in any way prejudiced by the error in the notice regarding the date of the decree or the newspaper in which the notice was published, or the length of time intervening between the first publication of the notice and the date of sale, they should have made their objections at the time the sale came on for confirmation or at least on some day of the term of the court in which the proceedings were held.

The court judicially knows that the original proceedings were concluded during the April term, 1929, of the Pulaski Chancery Court, that that term expired by operation of law prior to the first Monday in October, and that the October term of the court expired before the first Monday in April, 1930. Therefore the petition to redeem filed on May 7, 1930, was filed at a term of the court subsequent to that when the orders complained of were made and over which the court had lost jurisdiction ex-

·cept for the grounds set out in § 6290 of Crawford & Moses' Digest. There are eight grounds for which a judgment or decree may be vacated or modified after the expiration of the term, for newly discovered evidence; where defendants have been constructively summoned; for misprision of the clerk; for fraud practiced by the successful party; for erroneous proceeding against an infant, etc.; for the death of one of the parties before the judgment; for unavoidable casualty or misfortune preventing the party from appearing or defending; for errors in a judgment shown by an infant in twelve months after arriving at full age, as prescribed in § 6277. It is obvious that the petition sets out none of these grounds. As early as the case of *Mayer* v. *Bullock*, 6 Ark. 282, the rule was declared that a final decree becomes absolute at the end of the term and cannot be opened for a new hearing at a subsequent term of the court. With that rule in mind, the Legislature in 1868 promulgated that statute which is now found in § 6290, *supra*, and in the case of *Turner* v. *Vaughan*, 33 Ark. 454, we held: "After the expiration of a term at which a decree is rendered the court rendering the decree has no power to set it aside or modify it except upon application under the statute and for some cause therein specified." The case of *Turner* v. *Vaughan* was where a decree had been rendered condemning the whole of the lands of the judgment debtor to be sold by a commissioner under a decree of foreclosure, and at a subsequent term the debtor sought to have exempted from the sale under the decree a part of the lands and to show that he had impressed the homestead character upon the same. In denying his right to have these lands exempted, the court said: "If, therefore, appellee had, in his answer to appellant's bill, not only denied, as he did, that he procured the lands to be conveyed to his wife to defraud his creditors, but, as a further defense, shown that he had impressed the homestead character upon a part of the lands, and asked the court, if it found the conveyance fraudulent and set it aside, to

decree to him the benefit of the homestead exemption provided for by the Constitution, the court should have so decreed.'' After holding that the court rendering the decree had no power to set aside or modify the decree after the expiration of the term except upon application under the statute, the court further said: ''If it be said that it is a hardship for a man to lose his homestead exemption because he failed to assert it at some particular time, or in some special mode, or in some particular proceedings, it may be replied that such is the law in relation to any defense which a man has an opportunity to make and fails to interpose it.''

In a number of decisions subsequent to the case of *Turner* v. *Vaughan, supra,* we have recognized the doctrine therein announced which is controlling in the case at bar. We therefore conclude that, appellants having failed to set up any of the matters alleged in the petition for redemption in the original proceeding, which appellants well might have done, the court at a subsequent term could not entertain these objections as its decree had become final. The decree of the chancellor is correct, and it is therefore affirmed.